Stuart R. Curran (State Bar No. 160631)
Lisa M. U'Ren (State Bar No. 195346)
SIMS, CURRAN & OCKEN
130 Sutter Street, 7th Floor
San Francisco, CA 94104
P: (415) 391-6182
F: (415) 391-3904
E-mail: scurran@cs-llp.net

Attorneys for Plaintiff
JAMESON T. ASHLEY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMESON T. ASHLEY,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO; MICHAEL HENNESSEY, individually and in his official capacity as Sheriff of the San Francisco County Sheriff's Department; and DOES 1 to 30,<br><br>　　　　　　Defendants. | Case No. CV12-0045DMR<br><br>**PETITION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM** |

　　　　Pursuant to Federal Rule of Civil Procedure 17(c) (2), Petitioner LISA ASHLEY hereby requests that this Court appoint her as Guardian ad Litem for her 24-year-old son JAMESON ASHLEY, who has a mental illness and is unable to competently represent himself and his interests in the above-captioned matter.

### I. JAMESON ASHLEY Has Significant Civil Rights Causes of Action Against the City and County of San Francisco and Other Defendants

　　　　This matter arises from the detention of plaintiff JAMESON ASHLEY in the San Francisco jail from October 21, 2010 through December 7, 2010. As alleged in plaintiff's Complaint herein, plaintiff ASHLEY was arrested for trespassing on the Golden Gate Bridge and was transported to the

San Francisco County Jail by representatives of the California Highway Patrol. Plaintiff ASHLEY could not provide the arresting police officers with his name and identification and, as such, the original booking card listed him as a "John Doe". However, a representative of the San Francisco Sheriff's Department booked him into the jail under a pseudonym – "Richard Head". Plaintiff ASHLEY, who suffers from mental disabilities as described below, was so traumatized by the events in question that he went mute. He remained mute for the entire time he was in the San Francisco jail – a total of seven weeks.

As a result of the acts described above, plaintiff ASHLEY's mother was unable to locate him for the seven weeks that he was in jail, despite the fact that she had requested and obtained the assistance of the San Francisco Police Department in finding him. (See the Declaration of Lisa Ashley, attached hereto.) Ms. Ashley and representatives of the San Francisco Police Department were unable to locate plaintiff because they were looking for him by his real name or, in the alternative, as a "John Doe". There was no way for them to find plaintiff under the name "Richard Head".

Plaintiff ASHLEY returned home after seven weeks in the San Francisco County Jail and remained mute for an additional two months. (See attached Declaration of Lisa Ashley.) Plaintiff ASHLEY suffers serious psychological and emotional problems as a result of his seven weeks in custody. He is terrified to travel to San Francisco. Moreover, he is terrified to participate in this lawsuit because he is afraid the police will retaliate against him and/or his brother, who lives in San Francisco. (See attached Declaration of Lisa Ashley.)

The egregious actions of the defendants, as described above and plaintiff ASHLEY's Complaint herein, had the result of confining a 24 year-old mentally ill man in jail for seven weeks on an allegation of misdemeanor trespassing. The trauma that he experienced in custody rendered him mute for an additional two months, thus preventing him from being able to obtain the psychological treatment that he needs.

## II. Plaintiff JAMESON ASHLEY is Unable to Represent Himself Herein and A Guardian ad Litem Must Be Appointed to Represent His Interests

As demonstrated by the attached Declarations of Lisa Ashley and Dr. Michael Wilkes,

plaintiff JAMESON ASHLEY is a 24 year-old man who has been suffering from a mental illness for the past two and one-half years. He has displayed erratic behavior and has been having delusions, but he refuses to participate in his own care. Dr. Wilkes, his treating doctor, is of the opinion that plaintiff ASHLEY's judgment about major life issues is substantially impaired. (See the Declaration of Michael Wilkes, M.D., attached hereto.) Dr. Wilkes believes plaintiff lacks the capacity to think abstractly and to make rational decisions. Dr. Wilkes' medical opinion is that plaintiff ASHLEY cannot participate in this lawsuit, including related discovery procedures, and cannot make important decisions about his life or make rational decisions that would need to be made during the course of a lawsuit. (See the attached Declaration of Michael Wilkes, M.D.) For the reasons set forth herein and in plaintiff's Complaint, plaintiff ASHLEY has significant civil rights causes of action that he would be unable to pursue without the appointment of a Guardian ad Litem.

### III. Federal Rule of Civil Procedure 17(c)(2) Requires That the Court Appoint A Guardian ad Litem to Represent Plaintiff's Interests Herein

Federal Rule of Civil Procedure 17(c)(2) provides as follows:

> A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem – or issue another appropriate order – to protect a minor or incompetent person who is unrepresented in an action.

Plaintiff ASHLEY does not have a guardian or conservator and no Guardian ad Litem has previously been appointed in connection with this matter. Plaintiff ASHLEY has causes of action for violations of his civil rights while in the custody of the San Francisco Sheriff's Department. The City and County of San Francisco is a named defendant. Based on the declarations of Lisa Ashley and Dr. Michael Wilkes, plaintiff ASHLEY is incompetent to represent himself in this proceeding and, pursuant to FRCP 17(c)(2), this Court should appoint Lisa Ashley as his Guardian ad Litem.

Petitioner Lisa Ashley is a competent individual who is willing to act as plaintiff ASHLEY's Guardian ad Litem herein. As noted in her declaration, Ms. Ashley is plaintiff ASHLEY's mother and full-time caregiver at the present time. As such, she is uniquely qualified to understand and protect her son's legal rights. Ms. Ashley understands what happened to her son while he was being held at the San Francisco County jail, including the fact that he was mute

1  while he was in jail and for a period of time afterward. Ms. Ashley has no interests adverse to her
2  son and, as his mother, she will act in his best interests as his appointed Guardian ad Litem.
3      WHEREFORE, Petitioner moves this court for an order appointing Lisa Ashley as
4  Guardian ad Litem for plaintiff JAMESON ASHLEY for the purpose of bringing this action on
5  the claims stated above and in plaintiff's Complaint herein.
6  Dated:

                  SIMS, CURRAN & OCKEN

          By _____
                  Stuart R. Curran
                  Attorneys for Plaintiff
                  JAMESON T. ASHLEY

## CONSENT OF APPOINTEE

I, Lisa M. Ashley, consent to act as Guardian ad Litem for plaintiff Jameson Ashley in the above-captioned action.

Dated: 1/24/2012               _____
                                      Lisa M. Ashley

Sims, Curran & Ocken
130 Sutter Street, 7th Floor
Roseville, CA 95661

-4-

PETITION AND ORDER APPOINTING GUARDIAN AD LITEM

# ORDER

The Petition for an Order appointing Lisa M. Ashley as Guardian ad Litem for plaintiff JAMESON ASHLEY is hereby GRANTED.

IT IS SO ORDERED.

Dated: February 2, 2012

_____
United States ~~District~~ Judge

PETITION AND ORDER APPOINTING GUARDIAN AD LITEM

Sims, Curran & Ocken
130 Sutter Street, 7th Floor
Roseville, CA 95661

In re: Application for Guardian Ad Litem for Jameson Taylor Ashley

Attachment 5d - 1

## DECLARATION OF MICHAEL WILKES, M.D.

I am a medical doctor licensed to practice medicine in the State of California. I am trained in internal medicine. I have seen Jameson Ashley six times over the past few months. Jameson is a very disturbed young man in need of psychiatric intervention, but he refuses to seek such treatment, despite the fact that medications have a high probability of alleviating the symptoms he is experiencing. It is clear to me that his judgment about major life issues is impaired. He lacks the capacity to think abstractly. He cannot make rational decisions about anything, including decisions in his own best interest, as evidenced by the fact that he refuses to even be assessed by a psychiatrist and refuses to participate in the subject lawsuit, both of which would greatly improve his life.

Based on the foregoing, he is unable to participate meaningfully in the subject lawsuit. He cannot make important decisions about his own life nor can he evaluate decisions which would need to be made in the course of a lawsuit, such as strategy and evaluation of settlement offers. He will be unable to participate in discovery proceedings, such as a deposition. It is my medical opinion that Jameson lacks the capacity to represent himself in this lawsuit and that a Guardian be appointed for him for purposes of this lawsuit.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 17 Jan 2012

_____
Michael Wilkes, M.D.

<u>In re: Application for Guardian Ad Litem for Jameson Taylor Ashley</u>
U.S. District Court Case No: CV12-0045DMR

## DECLARATION OF LISA ASHLEY

I, Lisa Ashley, am the mother of the proposed ward, Jameson Taylor Ashley (DOB: 3/17/87 – 24 years old). I have personal knowledge of the following facts and could and would testify competently thereto in a court of law. Jameson has been suffering from an as-yet undiagnosed mental illness for the past two-and-a-half years. At this point, he is having some delusions. He has smashed two phones because he believes the FBI is trying to contact him. He has thrown away a number of CDs that he stole because he thought the FBI would come "audit" our house and that we would get into trouble. He told me that things were crawling in his bed between the mattress and the box spring. He laughs to himself inappropriately. He cannot carry on a conversation for any length of time and keep his concentration on the topic at hand. He has poor concentration and asks me to write anything down that he needs to recall such as chores to do for that day.

Jameson refuses to see a psychiatrist, although he is now seeing a general practitioner, Dr. Michael Wilkes, who is trying to assist us in getting a diagnosis for Jameson. Dr. Wilkes is working to get Jameson on the appropriate medication. Jameson was briefly on medication in September, 2010 while under the care of a psychiatrist and it seemed to help. After about 6 weeks, he stopped taking the medication voluntarily and refused to return to the doctor. He has no insight into his illness and refuses to help himself get psychiatric treatment. He has refused to cooperate to get him any sort of public assistance, although I have now gotten SSI benefits for him, with me as the payee as he refuses to get a checking account. He is unable to work. He is completely dependent on me for shelter (he has been homeless in the past).

In October, 2010, just after he voluntarily stopped taking his medication, Jameson was arrested by the California Highway Patrol for trespassing. He did not have any identification, although he did tell the officer his name was James. He was arrested and taken to the San Francisco jail. Due to his mental illness and the trauma of the situation, he went mute. At the time he arrived at the jail, the CHP handed the booking card to the sheriff. At that time, his booking card listed him as a "John Doe" because he had no identification. Rather than book him as a John Doe, the sheriff's deputy whited-out the "John Doe" on the booking card at the jail and replaced it with the name "Richard Head." Despite the fact that my son had been arrested before, and therefore had a record with which to identify him (in fact, when the sheriff moved him from the holding cell to the general population, they called him by his real name), the name on the booking card was never changed to either John Doe or his real name.

While he was in jail, I was frantically trying to locate him, but I was unable to do so because the police had intentionally misidentified him as Richard Head. I filed a missing person report two days after Jameson went missing. I was working with Detective Yee of the San Francisco Police in my efforts to locate Jameson. Detective Yee continuously told me that Jameson was not in jail because there were no John Does fitting his description and there was no one being held under Jameson's real name. I worked with Detective Yee up until the time I was notified by letter from Harold Holland at the public

defender's office that Jameson was in custody, which was approximately seven weeks after Jameson went missing. Mr. Holland advised that Jameson was ready to be sent to a State Hospital because he was mute.

If the police had registered him as a John Doe or changed the booking card to reflect his true name once they identified Jameson, I would have been able to locate him and he would not have had to stay in jail for seven weeks. He remained mute during those seven weeks before we finally found him. He remained mute for an additional two months afterward. He is now terrified to go to San Francisco, despite the fact that his brother lives there. Jameson is afraid that he will be arrested again, and that, if he sues the City and County of San Francisco, the police will retaliate against his brother, who is living and going to school in San Francisco. It is important to bring a civil action against the City and County of San Francisco for violation of his civil rights, not only for Jameson but also for other mentally ill people who are taken into custody.

Jameson is not competent to represent himself in this action because he is not able to evaluate the situation and act in his own best interest. Due to the outrageous actions of the police in this case, he is terrified to go anywhere near San Francisco and therefore cannot participate in court hearings and discovery, such as depositions. He is so traumatized by these events that he would not be able to participate meaningfully in discovery. He is not able to concentrate. He would not be able to evaluate a settlement offer and determine if it is fair. As such, I have agreed to act on Jameson's behalf to prosecute a necessary lawsuit for egregious action by the police department, one for which Jameson deserves compensation.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at ___Sacramento___, California.

Dated: 1/18/2012

Lisa M. Ashley

Declaration of Lisa M. Ashley in Support of Petition for Guardian ad Litem for Jameson Ashley     2