UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMESON ASHLEY,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, MICHAEL HENNESSEY, individually and in his official capacity as Sheriff of the San Francisco County Sheriff's Department; and DOES 1 to 30,<br><br>　　　　　Defendants. | Case No.: CV-12-00045-JST (KAW)<br><br>ORDER RE 12/13/2012 AND 4/19/2013 DISCOVERY LETTERS PERTAINING TO RULE 35 MENTAL EXAMINATION |

Before the Court are the joint discovery letters filed on December 13, 2012 and April 19, 2013. (Dkt. Nos. 62 & 81). While there is no dispute that Plaintiff Jameson Ashley has put his mental state in controversy and that good cause exists to conduct a Rule 35 independent medical examination (IME), the parties disagree as to the length of the mental examination, the contents of the examination, the presence of a third party during the examination, and whether the examination may be tape recorded.

Upon review of the joint letters, the Court finds this matter suitable for resolution without further briefing and without oral argument pursuant to Civil Local Rule 7-1(b), and orders Plaintiff to undergo a 5-hour examination, subject to the conditions set forth below. There shall be no third-party observer present, but the parties may audio record the interview portion of the examination. In addition, Plaintiff's mother may be present outside of the examination room, and Plaintiff may consult with her during breaks as necessary.

///

///

## I.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 35(a), when the mental or physical condition of a party is in controversy, the court may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner. The order may be made only on a motion for good cause. Fed.R.Civ.P. 35(a).

## II.    BACKGROUND

On October 21, 2010, Plaintiff Jameson Ashley was arrested on the Golden Gate Bridge for trespassing and was transported to the San Francisco County Jail. (12/13/2012 Joint Letter, "First Joint Letter," Dkt. No. 62, at 1, 4.) Plaintiff was then transferred to San Francisco General Hospital for evaluation pursuant to a 5150 order. (4/19/2013 Joint Letter, "Second Joint Letter," at 2.) Within 72 hours, he was sent back to jail, where he was placed in psychiatric housing for observation and treatment. (5/1/2013 Joint CMC Statement, Dkt. No. 82, at 6.). Plaintiff was detained for 47 days, during which he was allegedly mute, and remained so until two months after his release. (Second Joint Letter, at 5.)

On January 4, 2012, Plaintiff filed this action. (Compl., Dkt. No. 1.) On May 8, 2012, the district court found Plaintiff incompetent to represent himself in this proceeding, and, pursuant to Federal Rule of Civil Procedure 17(c)(2), appointed Plaintiff's mother, Lisa Ashley, as his Guardian ad Litem. (Dkt. No. 33.)

In September 2012, Plaintiff underwent a 5 hour deposition in this matter. On December 13, 2012, the parties filed the First Joint Letter regarding the Rule 35 independent mental examination. On January 18, 2013, Plaintiff was taken to the emergency room at UC Davis Hospital and involuntarily hospitalized at a psychiatric facility. (First Decl. of Michael Wilkes, M.D., Dkt. No. 68.) As a result of Plaintiff's hospitalization, the parties stipulated that no determination regarding the terms of Plaintiff's proposed IME should be made at this time, and requested that the undersigned retain jurisdiction over the discovery dispute. (Order Granting Stipulation, Dkt. No. 71.)

On April 8, 2013, the parties notified the Court that Plaintiff's psychological condition had shown some improvement and that he was now able to participate in an IME to support his suit.

2

(Dkt. No. 79.) On April 10, 2013, the Court ordered the parties to further meet and confer regarding the proposed IME, and to file a subsequent joint letter along with current declarations from their respective medical experts attesting to the facts presented in the new joint letter. (Dkt. No. 80.)

On April 19, 2013, the parties filed an updated joint letter outlining virtually identical disputes as filed in the original letter.

### III. DISCUSSION

Since the parties agree that Plaintiff's mental state is in controversy and that good cause exists to conduct a Rule 35 mental examination, the Court will only address the issues in dispute.

#### A. Length and Scope of the Examination

The parties disagree as to the length and scope of the IME. Defendants propose a five hour examination to be performed by Dr. Joanna Berg, Ph.D, a licensed psychologist, consisting of a 2.5 hour interview and 2.5 hours of psychological testing. (Second Joint Letter, at 2-3.) Plaintiff seeks to limit the length to no longer than one and one half hours. (Second Joint Letter, at 1.) In support of this request, Plaintiff submitted a declaration from Dr. Michael Wilkes, M.D., who is Plaintiff's treating physician. (*See* Decl. of Michael Wilkes, M.D., "Second Wilkes Decl.", Dkt. No. 81, Exh. 2.) Pursuant to Rule 35, the court may specify the scope and length of the examination. *See* Fed. R. Civ. P. 35.

Defendant contends that one and one half hours is insufficient given that Plaintiff "claims that his pre-existing psychological problems were exacerbated by his arrest and lengthy incarceration." (Second Joint Letter, at 5.) Dr. Berg states that she needs approximately five hours to conduct a forensic psychological evaluation consisting of a comprehensive clinical interview and a standard battery of psychological testing to form adequate psycho-diagnostic opinions. (Decl. of Joanna Berg, Ph.D., "Berg Decl.", Dkt. No 81, Exh. 1., at 1-2, 4.) Dr. Wilkes states that "[t]he proposed 5 hour psychological examination would, in my opinion, be counterproductive and would jeopardize [Plaintiff's] recovery, which is still in its very early stages." (Wilkes Decl., at 1.) The Court notes that Dr. Wilkes' training is in internal medicine, rather than psychology, and his declaration provides no justification as to why he is of the medical

3

1  opinion that "it is not advisable for Mr. Ashley to submit to a lengthy examination, including an
2  extensive battery of diagnostic tests, at the present time" nor why Plaintiff "could tolerate an
3  examination of approximately one hour in length." *Id.* As a result of Dr. Wilkes' broad and
4  unsupported statements of medical opinion, the Court will afford less weight to his opinions.

Plaintiff's mental state and whether his incarceration impacted him psychologically are the primary issues in this litigation, so Defendants have a right to assess his intellectual abilities and his mental state to confirm his diagnosis, to determine the severity of any psychological disorders, and to come to a conclusion as to whether his incarceration contributed to his current mental state or if his diagnosis was likely preexisting. In order to make those determinations, Dr. Berg seeks to administer Wechsler Adult Intelligence Scale IV (WAIS IV), Rorschach Inkblot Test, Minnesota Multiphasic Personality Inventory 2 (MMPI-2), and the Millon Clinical Multiaxial Inventory III (MCMI-III). She states that "these four tests are used together to reach a consistent, comprehensive picture of an individual's emotional, intellectual and personality functioning" thereby "ensur[ing] a more accurate psychological diagnosis and ultimately a more accurate forensic psychological opinion." (Berg Decl., at 3.) These are all standard tests that have been found by numerous courts, including those in the Northern District, to be proper tools for psychological assessment. *See, e.g., Ayat v. Societe Air France,* 2007 WL 1120358, at *7 (N.D. Cal. April 16, 2007); *Gavin v. Hilton Worldwide, Inc.*, 2013 WL 1402350, at *7 (N.D. Cal. Apr. 5, 2013).

By contrast, Plaintiff objects to the scope of "the proposed testing procedures in their entirety on the grounds that they are unduly burdensome given the unique circumstances of this case" and Plaintiff's previous schizophrenia diagnosis. (Second Joint Letter, at 6.) Instead, Plaintiff proposes that Dr. Berg "review the videotape of Plaintiff Ashley's deposition and the subpoenaed medical records" to form her medical opinions. (Second Joint Letter, at 6-7.) Dr. Berg states that watching Plaintiff's videotaped deposition is not an adequate substitution for a clinical evaluation, because "[n]o narrative information is allowed, and it is designed to gather specific sets of facts, not clinical information." (*Id.* at 3.) Regardless, Defendants have the right to perform their own assessment, because one of the purposes of Rule 35 is to level the playing

4

field in cases where physical or mental condition is at issue, because "[a] plaintiff has ample opportunity for psychiatric or mental examination by his/her own practitioner or forensic expert." *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal. 1995). The Court notes that Plaintiff has not objected to Dr. Berg's qualifications nor claimed that she is not "a suitably licensed or certified examiner." *See* Fed. R. Civ. P. 35(a)(1).

The Court is convinced that the proposed five hours of testing, split evenly between the interview and standard psychological testing, is necessary to obtain an accurate diagnosis. In fact, the courts in this district routinely permit mental examinations of five hours or longer. *See, e.g., Ayat,* 2007 WL 1120358, at *9 (eight hours); *Gavin*, 2013 WL 1402350, at *7 (five to six hours with the ability to extend if testing is not completed).

The examination shall be conducted over two to three days with Plaintiff being given breaks as needed. Dr. Berg shall have the discretion to allocate the interview and testing portions over that time period, so long as Plaintiff does not undergo more than 2.5 hours in a single day. Should Plaintiff require frequent breaks, the time limits may be reasonably extended to account for the amount of time necessary to stop and restart the interview and/or testing portions. Further, in the unlikely event that Plaintiff reacts so negatively that the examination itself causes him psychological harm, the Court trusts that Dr. Berg will end the examination as sworn in her declaration. (Berg Decl., at 4.)

**B. Presence of a Third Party in the Examination Room**

Defendants argue that the presence of a third party witness, particularly Plaintiff's mother, would interfere with the exam. These concerns are legitimate and courts in this district have rejected the presence of a third party observer. *Ayat,* 2007 WL 1120358, at *7.

Courts in other districts have also denied requests to have a third party observe a mental examination because, "[t]hird party observers may, regardless of their good intentions, contaminate a mental examination." *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 609-10 (C.D.Cal.1995) (citations omitted); *see also Holland v. United States*, 182 F.R.D. 493, 495 (D.S.C.1998) (majority of federal courts have rejected the notion that any third party should be allowed to observe a Rule 35 examination). The *Ragge* court acknowledged that the potential for

a third party observer to interfere with, or even contaminate, a mental examination is recognized in California Code of Civil Procedure Section 2032(g)(1), which provides for the presence of a third party observer at a physical examination, but not at a mental examination. *Id.* at 610. In denying the party's request for an observer, the court took into consideration that the examining doctor did not propose to use any unorthodox or potentially harmful techniques in his examination. *Id.* Like the examining doctor in *Ragge*, Dr. Berg proposes to use tests that are routinely administered to obtain a "comprehensive picture of an individual's emotional, intellectual and personality functioning." (Berg Decl., at 3.)

The court in *Tomlin v. Holecek,* 150 F.R.D. 628 (D.Minn.1993), detailed a split of authority that exists regarding this issue. The court refused to allow the presence of counsel, a third party, or tape recorder during a psychological exam because it would: (1) potentially invalidate the examination results; (2) fail to provide a "level playing field," as plaintiff was not required to tape record his examinations with his own health care providers; and (3) create an adversarial environment during an evaluation that should be neutral.

Based on the facts and the prevailing authority in this district, a third party observer shall not be present during Plaintiff's mental examinations, but Plaintiff's mother may be present outside of the examination room, and he may consult with her during breaks as needed.

### C. Audio Recording the Examination[1]

The presence of an audio recording device also has the potential to contaminate the mental examination, but has been permitted by federal courts in this district and California law affirmatively allows the practice. *See, e.g., Gavin*, 2013 WL 1402350, at *7; *see also* Cal. Civ. Proc. Code § 2032.530. Other courts have not permitted audio recordings for fear of invalidating testing results and failing to provide a "level playing field," as plaintiff is not required to record his own examinations with his own health care providers. *Tomlin v. Holecek*, 150 F.R.D. 628, 632 (D. Minn. 1993); *see also Ayat,* 2007 WL 1120358, at *7-8 (denied plaintiff's request to audio record mental examination).

---

[1] The Court uses the term "audio recorder" or "audio recording device" in lieu of "tape recorder" to allow for an array of recording devices, such as voice recorders utilizing mp3 technology.

During the parties meet and confer efforts, however, Defendants offered to allow the interview portion of the examination to be audio recorded, as an alternative to having a third party observer present in the examination room. Given the district court's determination that Plaintiff is incompetent to represent his own interests, the Court is willing to allow the interview portion of the examination to be audio recorded. To the extent practicable, this should be accomplished nonobtrusively, so as to not unduly influence the examination.

Plaintiff, however, has not met his burden of convincing the court that the proprietary testing portion of the examination should be recorded, and since Defendants do not own the rights to the proprietary tests, they do not have the right to distribute the proprietary material. Should Plaintiff wish to obtain copies, he may subpoena the company that produces the materials and/or depose Dr. Berg, who will be administering the tests. *See Gavin*, 2013 WL 1402350, at *7.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff shall undergo a Rule 35 independent medical examination performed by Dr. Joanna Berg. The mental examination shall last no more than 5 hours, with 2.5 hours (not including breaks) allocated to both the interview and the psychological testing portions as provided above. The examination shall consist of the Wechsler Adult Intelligence Scale IV (WAIS IV), Rorschach Inkblot Test, Minnesota Multiphasic Personality Inventory 2 (MMPI-2), and the Millon Clinical Multiaxial Inventory III (MCMI-III). Plaintiff may take breaks for personal comfort and necessity as needed. Should Plaintiff not complete the interview or psychological testing portions in the allotted time due to the frequency of breaks, the length of the examination may be extended to accommodate the additional time necessary to stop and restart the examination.

No third party observer may be present during the examination, but the interview portion may be tape recorded. The testing portion may not. Plaintiff's mother and Guardian ad Litem, Lisa Ashley, may be present outside of the examination room and Plaintiff may consult with her during breaks as necessary. Plaintiff's mother shall not interfere with the examination under any circumstances, and all contact with Plaintiff during breaks must be initiated by Plaintiff or Dr. Berg.

The parties shall meet and confer as to the date, time, and location of the examination, which shall be scheduled based on the earliest availability of Dr. Berg.

IT IS SO ORDERED.

Dated:  May 30, 2013

_____
KANDIS A. WESTMORE
United States Magistrate Judge